**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Byanka Aguirre, et al.,** | ) | **CASE NO. 1:26 CV 330** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **United States of American, et al.,** | ) | |
| | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

## INTRODUCTION

This matter is before the Court upon the Motion to Dismiss filed by the defendants.[1] (Doc. 8.) This case is a writ of mandamus. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.

## FACTS[2]

Plaintiff Byanka Aguirre ("Aguirre") is a citizen of the United States of America. Plaintiff Mohamed Amine Benhrima ("Benhrima") is a citizen of Morocco (together with Aguirre,

---

[1] Plaintiffs named several defendants: (1) Donald J. Trump, in his official capacity, President of the United States of America, (2) Kristi Noem, Secretary U.S. Department of Homeland Security, (3) U.S. Department of Homeland Security, (4) Kika Scott, Senior Official Performing the Duties of the Director of United States Citizenship and Immigration Services, and (5) Andrew Davis, Acting Deputy Director of U.S. Citizenship and Immigration Services. This Court will refer to these named defendants collectively as "Defendants."

[2] For purposes of deciding the pending motion to dismiss, the facts alleged in Plaintiffs' Writ of Mandamus and Complaint for Declaratory and Injunctive Relief ("Writ of Mandamus and Complaint") are presumed true.

"Plaintiffs"). Benhrima entered the United States on December 5, 2013, as a student holding F-1 visa status.

On June 11, 2014, while a student, Benhrima married his former spouse Jama Zamzam ("Zamzam"). On July 24, 2014, Zamzam and Benhrima concurrently filed Form I-130, Petition for Alien Relative ("Form I-130"), and Form I-485, Application to Register Permanent Residence or Adjust Status ("Form I-485"), with the US Citizenship & Immigration Services ("USCIS"). In May 2015, however, Zamzam appeared at the Columbus Field Office and gave a sworn statement in which she stated that she wished to withdraw her Form I-130.[3] On May 12, 2015, USCIS acknowledged Zamzam's request to withdraw her Form I-130 and, on the same date, Benhrima's Form I-485 was denied. On August 3, 2015, Benhrima was issued a Notice to Appear ("NTA"). Zamzam and the Benhrima divorced on October 30, 2015.

Aguirre and Benhrima married in Columbus, Ohio on August 10, 2016. On September 7, 2016, Benhrima was ordered removed from the United States after he failed to report to appear at his initial hearing. Aguirre and Benhrima concurrently filed their respective Form I-130 and Form I-485 on December 9, 2016.[4]

---

[3] Although the specifics are not relevant to this Court's disposition of the pending motion to dismiss, it seems undisputed that Zamzam's May 2015 statements included explicit allegations that the sole purpose of her and Benhrima's marriage was so Benhrima could obtain permanent resident status in the United States, along with allegations that Benhrima had assaulted her, that Benhrima had expressed a desire to go to Iraq to kill Americans, and that a known associate of Benhrima had traveled to Iraq by way of Morocco to kill Americans.

[4] Plaintiffs represent that this application included a sworn affidavit submitted by Zamzam, which refuted parts of her May 2015 statements to USCIS. Specifically, she swore in her affidavit that she married Benhrima in good faith and not for immigration purposes and that the assault she reported never happened.

On January 13, 2017, Benhrima filed a motion to reopen the removal proceedings, arguing that Benhrima married a U.S. citizen and Benhrima never received the NTA. The Department of Homeland Security ("DHS") opposed the reopening. On March 23, 2017, the immigration judge denied the motion to reopen and Benhrima was subsequently removed to Morocco.

On July 2, 2019, USCIS issued a Notice of Intent to Deny Aguirre's Form I-130 on the basis that Benhrima's prior marriage to Zamzam was not bona fide. Aguirre submitted additional documentation to establish that Benhrima and Zamzam's previous marriage was entered into in good faith. Still, on August 13, 2019, USCIS issued a decision denying Aguirre's Form I-130, concluding that "based on review of the entire record" Aguirre failed to establish that Benhrima's prior marriage to Zamzam was bona fide and not entered into in order to circumvent immigration laws in bad faith so that Benhrima could obtain permanent resident status.

On August 27, 2020, Plaintiffs sought judicial review of USCIS's adverse decision. That case was dismissed as moot after USCIS informed Plaintiffs on February 10, 2021, that it had reopened Plaintiffs' case and approved Aguirre's Form I-130.

Plaintiffs then processed Benhrima's immigrant visa application ("Benhrima's Visa Application") through the National Visa Center and Benhrima was interviewed at the U.S. Consulate in Casablanca on March 7, 2023. Plaintiffs alleged in their Writ of Mandamus and Complaint that "there has been no action by any governmental agency to admit . . . Benhrima back to the United States" since his March 2023 interview.

Plaintiffs filed this action against Defendants on February 2, 2026, seeking a writ of mandamus and alleging various claims related to Defendants' adjudication of Benhrima's

immigration status over the years. Defendants have moved to dismiss Plaintiffs' Writ of Mandamus and Complaint. Plaintiffs oppose the motion.

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. "Federal courts are courts of limited jurisdiction" and, "[u]nlike state trial courts, they do not have general jurisdiction to review questions of federal and state law." *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, their authority is limited to deciding "cases that the Constitution and Congress have empowered them to resolve." *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 884–85 (N.D. Ohio 2010). By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.* A challenge to subject matter jurisdiction may be considered a factual attack when the attack relies on extrinsic evidence, as opposed to the pleadings alone, to contest the truth of the allegations. *Id.*

And when considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 335 F.

App'x 587, 588 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). That said, the complaint must set forth "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The Court is not required to accept as true legal conclusions or unwarranted factual inferences. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint that merely offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*

**ANALYSIS**

Plaintiffs' Writ of Mandamus and Complaint lists five enumerated claims and seeks several forms of declaratory and injunctive relief. Although not entirely clear, Plaintiffs' claims and requested relief ultimately seem to seek two things: (1) a final adjudication of Plaintiffs' Visa Application and (2) declarations invalidating aspects of Defendants' adjudication of Benhrima's immigration status

over the years. For the reasons that follow, this Court lacks subject matter jurisdiction over Plaintiffs' claims and requested relief.

**1. Plaintiffs' Claims Seeking a Final Adjudication of the Visa Application**

District courts possess jurisdiction to compel agency action only in the "extraordinary" case when they find the agency violated "a clear and indisputable" duty to act. *In re Parker*, 49 F.3d 204, 206 (6th Cir. 1995). Courts may remedy such violations by issuing a writ of mandamus. *See* 28 U.S.C. § 1361. Alternatively, courts can order relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), which authorizes orders to "compel agency action unlawfully withheld or unreasonably delayed[.]" Those two paths to compulsory relief share a common threshold: The court may act "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted); *see also Huron Mountain Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x 390, 393 (6th Cir. 2013) ("When a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." (quoting *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004))).[5]

Relevant here, a noncitizen can obtain a family-based immigrant visa to immigrate to the United States and become a lawful permanent resident ("LPR"). 8 C.F.R. § 204.1(a)(1); 8 U.S.C. §§ 1154(a)(1)(A)(i), (a)(1)(B)(i)(I). As Defendants explain, "[g]enerally, obtaining a family-based

[5] As the Supreme Court has noted, "the APA carrie[s] forward the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs—principally writs of mandamus[.]" *Norton*, 542 U.S. at 63.

immigrant visa is a two-step process, involving two different applications, made before two different agencies, by two different people." (Doc. 8-1, at 4.)

First, a U.S. citizen or LPR must file a Form I-130 petition with USCIS to determine whether the necessary familial relationship exists between the U.S. citizen/LPR petitioner and the beneficiary. 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1). The approval of an I-130 petition does not grant any immigration status or benefit. *See* 22 C.F.R. § 42.41 ("The approval of a petition does not relieve the alien of the burden of establishing to the satisfaction of the consular officer that the alien is eligible in all respects to receive a visa."). But if USCIS approves the petition, then the applicants may proceed to the second step. 8 U.S.C. § 1154(b).

At the second step, the USCIS forwards the approved I-130 petition to the Department of State's ("DOS") National Visa Center ("NVC"). At this point, each intended immigrant residing outside of the United States must file a separate Application for Immigrant Visa and Alien Registration, Form DS-260 (previously Form DS-230) with the NVC. 8 U.S.C. § 1202(a); 22 C.F.R. §§ 42.61(a), 42.62(a) & (b), 42.63, 42.65. After the intending immigrant has filed the specified documents, paid the necessary fees, and provided the required documentation, the NVC schedules an in-person interview and transfers the case to the appropriate embassy abroad. After the file is sent to the embassy, the immigrant visa applicant must appear before a consular officer to execute a visa application and be interviewed. 22 C.F.R. § 42.62.

"When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the [Immigration and Nationality Act ("INA")] and the implementing regulations," the consular officer must do one of three things:

1. issue the visa,

2. refuse the visa, or,

3. discontinue granting the visa, pursuant to an outstanding order under INA 243(d).

22 C.F.R. § 42.81(a). Consular officers alone have the authority to issue or refuse to issue an immigrant visa. 22 C.F.R. § 42.71(a).

Here, Plaintiffs allege that at the time they filed their Writ of Mandamus and Complaint on February 10, 2026, no action had been taken as to Benhrima's Visa Application. It appears that non-party DOS has since refused Benhrima's Visa Application. (Doc. 8-4 (noting refusal date of May 19, 2026).) This refusal then moots Plaintiffs' claims seeking a final adjudication of Benhrima's Visa Application. While Plaintiffs acknowledge the refusal in their opposition brief, they maintain that they are still entitled to some relief because they believe the refusal was based on inaccurate record evidence. Plaintiffs contend that USCIS "is obligated to the correct the record[] and allow the DOS to adjudicate [Benhrima's] Visa Application based on factual allegations, not inaccurate information." (Doc. 11, at 3.)

The relief Plaintiffs seek is "a drastic and extraordinary remedy" limited to compelling "discrete agency action" that the agency "is required to take." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). Even assuming the record relied upon to refuse Benhrima's Visa Application did include some objectively "inaccurate information," Plaintiffs have not cited any specific law or regulation that requires any of the Defendants to retroactively correct record evidence. Plaintiffs' failure to point to any discrete, non-dictionary action required of the Defendants is fatal to their claim.

In a similar vein, Plaintiffs contend that non-party DOS's refusal of Benhrima's Visa Application based on Section 221(g) of the INA is not a final adjudication. Here too, Plaintiffs fail to cite any law that requires Defendants to take any further action. To be sure, "[a] plain reading of §

42.81(a) and § 41.121(a) indicates that the refusal that occurred here, a refusal under INA 221(g), is all that the regulations require." *Omar v. Blinken*, 756 F. Supp. 3d 520, 533 (S.D. Ohio Nov. 15, 2024) ("As a result, this Court finds that, while the applicable regulations do create some nondiscretionary duty, that duty is fulfilled by a denial under 221(g).") (citing cases). There is no law requiring Defendants [or non-party DOS] to take some further discrete, non-discretionary action concerning the refused visa. *See Hussein v. Beecroft*, 782 F. App'x 437, 442–43 (6th Cir. 2019) ("[G]iven that defendants fully discharged their duties under the law, there was simply nothing else the district court could order defendants to do . . . .").

For all the aforementioned reasons, this Court lacks subject matter jurisdiction over Plaintiffs' request that this Court compel Defendants to approve Benhrima's Visa Application.[6] Defendants' Motion to Dismiss the related claims is GRANTED.[7]

---

[6] The Court notes that none of the named Defendants are responsible for the adjudication of Benhrima's Visa Application. Rather, DOS is the agency responsible for adjudicating Benhrima's Visa Application. Plaintiffs did not name DOS as a party to this suit but, in their opposition brief, they request the ability to add DOS as a defendant. Because Plaintiffs' claim is clearly moot and this Court lacks subject matter jurisdiction over any further relief, allowing Plaintiffs leave to add DOS as a party would be futile and Plaintiffs' request is DENIED. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 807 (6th Cir.2005) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss.").

[7] Because this Court finds it lacks subject matter jurisdiction over Plaintiffs' claims here, it does not reach Defendants' alternative basis for dismissal under Rule 12(b)(6). *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001) ("As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute."); *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) ("[C]ourts must decide jurisdictional issues before merits issues.").

But even if this Court did have subject matter jurisdiction over these claims, Plaintiffs have failed to allege sufficient facts to support them. Plaintiffs seem to allege that Defendants' delay in adjudicating Benhrima's Visa Application violated the Plaintiffs' Due Process rights. Plaintiffs fail, however, to allege any invasion of a legally protected interest. At most, they seem to allege that Defendants' failure to further adjudicate Benhrima's Visa Application has deprived them of their Due Process right to family relationships because it has kept them apart from their chosen spouse.

**2. Plaintiffs' Claims Related Benhrima's Final Order of Removal**

The rest of Plaintiffs' claims seek various declaratory and injunctive relief concerning Defendants' adjudication of Benhrima's final order of removal. Plaintiffs essentially ask this Court to review Defendants' fact-finding process and make determinations about the same. It is well-established, however, that the REAL ID Act precludes district court review of collateral attacks to final orders of removal. *Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010) (citing 8 U.S.C. § 1252). Plaintiffs have not cited any authority to the contrary.[8]

Accordingly, this Court lacks jurisdiction to review Defendants' actions collateral to Benhrima's final order of removal. Defendants' Motion to Dismiss these claims is GRANTED.

---

The Supreme Court has held, however, that a U.S. citizen has no constitutionally protected interest to have their foreign citizen family members live in the United States. *Dep't of State v. Muñoz*, 602 U.S. 899, 916–17 (2024) ("While 'families of putative immigrants certainly have an interest in their admission,' it is a 'fallacy' to leap from that premise to the conclusion that United States citizens have a "'fundamental right'" that can limit how Congress exercises 'the Nation's sovereign power to admit or exclude foreigners.'" (quoting *Fiallo v. Bell*, 430 U.S. 787, 795 n.6 (1977)); *see also, e.g.*, *Baaghil v. Miller*, 1 F.4th at 427, 433 (6th Cir. 2021) ("As to Ahmed, the question is whether the visa denials violated his constitutional rights. They did not. American residents—whether citizens or legal residents—do not have a constitutional right to require the National Government to admit noncitizen family members into the country."); *Omar*, 2024 WL 4803847, at *4 ("[Plaintiff] has no constitutionally protected liberty interest in her spouse being admitted to the country.").

[8] In fact, Plaintiffs do not address the REAL Act's applicability at all in their opposition brief. Plaintiffs' failure to address Defendants' argument amounts to a forfeiture of their claims. *Notredan, LLC v. Old Republic Exchange Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (citing *Allstate Ins. Co. v. Global Medical Billing, Inc.*, 520 F. App'x 409, 412–13 (6th Cir. Apr. 8, 2013)).

**CONCLUSION**

For all the aforementioned reasons, Defendants' Motion to Dismiss is GRANTED and this case is DISMISSED.

IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge

Date: 9/14/2026